# EXHIBIT A

## DECLARATION OF JOANNE E. VOGEL, Ph.D.

I, Joanne Vogel, declare:

1.  I have personal knowledge of the facts set forth in this Declaration and if called to testify, could and would competently and truthfully testify about these facts.

2.  I am the Vice President of Student Services at Arizona State University ("ASU"). My responsibilities as Vice President of Student Services include overseeing student support services and resources, including the Dean of Students Office, Student Rights and Responsibilities, Student Advocacy and Assistance, Counseling Services, Health Services, new student programs, ASU Family, Student Connection and Community, Student Accessibility and Inclusive Learning Services, Residential Life, ASASU (ASU student government), off-campus relations, fraternity and sorority life, student clubs and organizations, and university housing. I have served in this role since January 2020.

3.  Prior to serving in this role, I served as the Deputy Vice President and Dean of Students for ASU's Tempe campus from July 2018 through May 2019. I served as the Deputy Vice President of Student Services from May 2019 through December 2019.

4.  I am a licensed mental health counselor and a credentialed sex therapist. My counseling and therapy practice has focused on helping individuals and couples form healthy relationships, including learning how to communicate with one another about their wants and needs. I have worked with individuals who were victims of sexual trauma as well as with individuals who engaged in sexually aggressive, compulsive, and reactive behaviors.

5.  I am also a trained victim advocate. I have worked with children in foster care who were abused and/or traumatized. I have also worked with college students to help them develop healthy relationships, including in connection with issues of seeking and

giving consent. My work as a confidential advocate has involved assisting individuals wrongfully accused of sexual misconduct.

6.      I have worked with both male and female victims. It is inaccurate to imply that being a victim advocate means only working with alleged victims of sexual abuse or misconduct, or a bias in favor of one gender over the other.

7.      Between August 2008 and January 2014, I worked at Rollins College in Winter Park, Florida. There, I served as the Director of Wellness & Counseling and Psychological Services. In that role, I developed a confidential advocacy program designed to support both complainants and respondents seeking support through securing medical care, reporting, and participating in conduct hearings or other processes. These services served both men and women, equally.

8.      ASU makes resources available to people claiming to be victims of sexual misconduct. But ASU also offers services for people responding to such allegations. ASU's Student Advocacy and Assistance will direct respondents to services like counseling. If a respondent asks for legal advice, then Student Advocacy and Assistance can refer the respondent to legal resources (though Student Advocacy and Assistance cannot provide legal advice). Again, Student Advocacy and Assistance provides services to male, female, and nonbinary students, and to alleged victims and respondents.

9.      The Amended Complaint alleges that I am responsible for overseeing and implementing ASU's Sexual and Relationship Violence Program ("SRVP") and suggests that this demonstrates a preference for female victims. (Compl. ¶¶ 256-263.) While it is true that the SRVP is part of Counseling Services, an area of ASU that falls within my responsibility, I do not have direct oversight or involvement in the program. I am not involved in managing the SRVP's social media accounts or selecting material to include on those accounts; these decisions are made by students who work for the SRVP.

10.     To the extent that the Amended Complaint suggests that the SRVP's primary focus is on supporting female alleged victims and survivors of sexual assault, this is a

mischaracterization. The SRVP's focus is on preventing sexual and relationship violence, without regard to the gender of the alleged victim or alleged perpetrator. The SRVP offers education, prevention, confidential advocacy, and healing programs to cultivate a survivor-supportive community that works to eliminate violence, discrimination and harassment.

11.     In my role as ASU's Vice President of Student Services, I also currently serve as the designated Appeal Decision Maker for appeals arising out of Title IX grievance hearing proceedings.

12.     I also serve as the Appeal Decision Maker in other matters relating to student misconduct arising from the University Hearing Board. I estimate that I have served in that role in about 24 other matters at ASU.

13.     In the Spring 2024 term, I served as the Appeal Decision Maker in connection with a Title IX Complaint ("Title IX Complaint") filed against Plaintiff John Doe by ASU student Jane Roe. I use the pseudonyms John Doe ("John") and Jane Roe ("Jane") in this Declaration to maintain the students' anonymity. This case is the first Title IX appeal that I recall being involved in for ASU using the current Title IX process.

14.     Dr. Cassandra Aska, Deputy Vice President of Student Services, served as the Hearing Officer and Decision Maker for the Title IX Complaint. After conducting a live hearing, via Zoom, Dr. Aska issued a Determination Regarding Responsibility, finding John not responsible for Title IX sexual harassment under ASU policy ACD 401: Prohibition Against Discrimination, Harassment, and Retaliation ("Policy").

15.     In her Determination Regarding Responsibility, Dr. Aska notified the parties of their right to appeal the decision or to submit a statement in support of the outcome. She also notified the parties of their rights to judicial review under A.R.S. § 12-904.

16.     Jane appealed the Determination of Responsibility by Dr. Aska under ASU's P20a: Interim Grievance Process for Formal Complaints of Title IX Sexual Harassment ("Procedures"). John did not file a statement in support of the Determination of Responsibility. Jane's appeal came to me for a review and determination.

3

17.    As Appeal Decision Maker on Jane's appeal, I reviewed the following materials in their entirety:

    a.  The Policy;

    b.  The Procedures;

    c.  Dr. Aska's Determination Regarding Responsibility dated January 30, 2024;

    d.  Jane's appeal of the Determination Regarding Responsibility dated March 27, 2024;

    e.  The Evidence Binder used by the parties at the Title IX hearing, containing all evidence submitted by Jane and John in connection with the investigation and hearing on Jane's Complaint;

    f.  The Zoom recording of the January 9, 2024 hearing conducted by Dr. Aska;

    g.  A transcript of the January 9, 2024 hearing; and

    h.  The audio recordings of the original interviews with Jane and John by ASU's Student Rights and Responsibilities.

18.    Under Section IV(F)(4) of the Procedures, my job was to "uphold or modify the previous decision or grant a rehearing."

19.    On April 10, 2024, I issued my decision on Jane's appeal and remanded the matter to Dr. Aska for review and rehearing based on my finding of a procedural irregularity that affected the outcome of the matter. A true and correct copy of my April 10, 2024 decision is attached as **Exhibit 1**.

20.    Dr. Aska concluded that a rehearing was not needed. On May 6, 2024, she issued an Amended Determination Regarding Responsibility ("Amended Determination"), and again found no responsibility for John. In the Amended Determination, Dr. Aska again notified the parties of their right to appeal the decision or to submit a statement in support

of the outcome.  She also notified the parties of their rights to judicial review under A.R.S. § 12-904.

21.     Jane appealed the Amended Determination on May 23, 2024, and I again served as the Appeal Decision Maker.  John did not submit a statement in support of the Amended Determination.

22.     In connection with this second appeal, I again reviewed all the information identified in Paragraph 17 above, along with Dr. Aska's Amended Determination and Jane's May 23 appeal.  After carefully considering the evidence, I issued my decision on June 10, 2024.  A true and correct copy of my June 10 decision is attached as **Exhibit 2**.

23.     My decision was one page, which is the usual length for such administrative appeal decisions that I issue.  It is wrong to suggest that the length of my decision implies that I did not carefully consider the record and evidence.

24.     As stated in my decision, I concluded the evidence supported a finding of nonconsensual digital penetration by John but did not support a finding that John attempted nonconsensual penile penetration.  [Ex. 2.]

25.     I therefore modified the finding in the Amended Determination and found John responsible for digitally penetrating Jane without consent in violation of the Policy. In connection with my decision, I imposed a one-year suspension for John, prohibiting him from being on campus and requiring that he complete a training regarding consent (followed by a meeting with Student Rights and Responsibilities about the training).  The one-year suspension expires June 10, 2025.

26.     The decisions I issued on Jane's appeals were based on the evidence.  The gender of the Complainant (Jane) and Respondent (John) did not affect my decisions in this matter.

27.     I do not recall feeling any pressure from Jane's advisor relating to this Title IX grievance process or otherwise, and I would not let such pressure affect my work as the Appeal Decision Maker.  I was not aware that Jane's advisor posted information about Title

IX complaints on her website, as discussed in Paragraphs 310-311 and reflected in Exhibit E of the Amended Complaint until after this lawsuit had been filed, and do not recall having any knowledge of the letter attached to the Amended Complaint as Exhibit D at the time I issued my decisions on Jane's appeals. Alleged "pressure and threats" from Jane's advisor did not play any role in my decisions in this matter.

28.    I also did not make my decisions in this matter based on fear of federal investigations or loss of federal funding. In fact, I do not recall any such alleged threats to ASU by the Department of Education in this time frame, nor do I recall having any knowledge of the letter attached to the Amended Complaint as Exhibit C at the time I issued my decisions on Jane's appeals.

29.    Likewise, I do not recall any protests about sexual assault or support for sexual assault victims at ASU since about 2022. I do not recall any protests during this Title IX grievance process, and I would never let such protests affect my work as the Appeal Decision Maker.

30.    In 2020, demonstrations to demand more resources for sexual abuse victims led to a story in the Arizona Republic. I was quoted in that story explaining why ASU likely did not need those additional demanded resources, which some members of the community may have interpreted as suggesting that ASU does not support victims of sexual abuse.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5 December 2024

_Joanne E. Vogel_

Joanne E. Vogel, Ph.D.

# EXHIBIT 1



**ARIZONA STATE UNIVERSITY**

April 10, 2024

RE:  Title IX Case No. 2023198502 – Appeal of Hearing Outcome

Dear Ms. ███████:

I have reviewed the materials connected to this case and am granting your appeal due to procedural irregularity affecting the outcome; namely, the part of the complainant appeal connected to the lack of credibility determinations identified in the Determination.  On review/rehearing and in the subsequent Determination, Student Rights and Responsibilities and the Hearing Officer/Determination Decision Maker will follow all process set forth by P20a. This includes that Student Rights and Responsibilities will point out inculpatory and exculpatory evidence, and the Determination Decision Maker will identify such relevant inculpatory and exculpatory evidence and articulate credibility determinations to provide sufficient information for me to meet the standard of review.  This may include, but is not limited to, the level of impairment of the parties, issues related to consent, internal consistency of accounts, tampering with or withholding evidence (e.g., cropping texts), weight given to testimony (e.g., temporal proximity), memory of the events, impact of trauma, previous investigations connected to this case, and reliability (e.g., eyes closed/couldn't see).

On the appeal grounds listed in Section IV (F)(3), I disagree that ASU is biased against you and in favor of the Respondent.  In accordance with P20a, as provided in the Notice of Hearing and Charges (G.c.I), "Conflict of interest and bias will not be presumed from prior education, employment, or personal affiliation of an individual.  Instead conflict of interest or bias will be found only when it can be objectively determined."  No objective evidence has been presented that the Title IX Coordinator, investigator(s), Hearing Officer or Decision-Maker(s) had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter.  As a precaution, and because I am unaware of any previous issue being raised, I confirmed that Dr. Aska does not know the respondent's father and was unaware that he is a faculty member until learning of this through the appeal memorandum dated 03/27/2024.  Accordingly, I disagree that this case necessitates retention of an outside adjudicator to serve as the Hearing Officer/Determination Decision Maker, and I am submitting this case for review/rehearing before Dr. Aska or another trained Hearing Officer/Determination Decision Maker.

As to the remaining appeal grounds, I do not reach a decision at this time, given the matters addressed above.

The review will begin immediately, and the rehearing will be scheduled as soon as practicable. During this review and rehearing, I am asking that the Determination Decision Maker make determinations related to each of the allegations of an escalating pattern of dating violence, sexual harassment by repeatedly trying to remove underwear without consent, and pressuring

oral sex.  Given that the previous Determination did not address credibility determinations, the Determination Decision Maker will also re-evaluate the allegations of and evidence regarding nonconsensual attempted penile penetration and nonconsensual vaginal penetration.  The rehearing will be conducted consistent with P20a, including the specified timeframes for hearing and, if relevant, any appeal raised thereafter.

Sincerely,

*Joanne Vogel*

Joanne Vogel, Ph.D.
Vice President, Student Services

cc:    Dr. Cassandra Aska, Deputy Vice President
       Laura L. Dunn, Advisor for Complainant
       ██████████, Respondent
       Jodi Preudhomme, Title IX Coordinator
       Dr. Brian Reece, Associate Dean of Students
       Norean Sablan, Title IX Hearing Administrator
       Sara Trower, Associate General Counsel
       Robert Vaught, Associate General Counsel
       Kenneth Ward, Advisor for Respondent

# EXHIBIT 2



**ARIZONA STATE UNIVERSITY**

June 10, 2024

RE: Title IX Case No. 2023198502 – Appeal of Amended Determination Issued 5/6/24

Dear Ms. ▉▉▉:

I have reviewed the Amended Determination dated May 6, 2024, and the Appeal of the Amended Determination dated May 23, 2024, in addition to the other available materials. After significant deliberation, this letter shares my decision.

With regard to the allegation of nonconsensual digital penetration of your vagina, I agree that the evidence supports that the norm of negotiating sexual boundaries in the relationship between Complainant and Respondent included each party asking and responding. ASU's consent definition allows for words or actions. However, it is difficult to reconcile the Respondent's testimony that he was unable to see or open his eyes with an ability to see nodding, and while the Respondent may have heard moaning, the possible connection of that sound to the clitoral stimulation falls short of indicating the necessary consent for digital penetration. The Respondent also states via text that he "should've asked," further corroborating the style of seeking consent and his failure to obtain informed and freely given consent. I, therefore, modify the determination to find the Respondent responsible for violating ACD 401: Prohibition Against Discrimination, Harassment and Retaliation, Title IX Sexual Harassment.

With respect to the alleged nonconsensual attempted penile penetration of your vagina, there is insufficient evidence to determine responsibility for the alleged attempted penile penetration. As quoted in the Appeal of Amended Determination, "I think he tried to go inside, with [his penis] just like in general…" Similarly, the email sent to Elizabeth Ojeda dated March 30, 2023, references perception in "what I had perceived to be a slight momentary attempt." From the record, I cannot determine within the standard of preponderance of the evidence if the alleged contact was connected to maneuvering in the backseat of a car, placing his penis closer yet on the outside, attempting to insert his penis, or any other possibility.

According to the Interim Grievance Process for Formal Complaints of Title IX Sexual Harassment, this is the final decision related to the complaint as outlined in the notice of allegations. Because I have modified the previous decision as relates to the allegation of nonconsensual vaginal penetration, I hereby also determine that ASU will suspend the Respondent for a period of one calendar year effective the date of this letter. While on suspension, the Respondent may not be on campus and will be required to complete trainings related to consent then meet with Student Rights and Responsibilities to review the learning. Once the sanctions are complete and upon any return to ASU, the Respondent will be placed on probation until graduation. The no-contact directive between the parties remains in effect.

Sincerely,

*Joanne Vogel*

Joanne Vogel, Ph.D.
Vice President, Student Services

**Educational Outreach and Student Services**
P.O. Box 876705, Tempe, AZ  85287-6705
Phone: (480) 965-2200   Fax: (480) 965-3080

cc:  Dr. Cassandra Aska, Deputy Vice President
     Laura L. Dunn, Advisor for Complainant
     █████████, Respondent
     Jodi Preudhomme, Title IX Coordinator
     Dr. Brian Reece, Associate Dean of Students
     Norean Sablan, Title IX Hearing Administrator
     Sara Trower, Associate General Counsel
     Rob Vaught, Associate General Counsel

# EXHIBIT B

## DECLARATION OF ANNE K. JONES, D. PHIL.

I, Anne K. Jones, declare:

1.     I have personal knowledge of the facts set forth in this Declaration and if called to testify, could and would competently and truthfully testify about these facts.

2.     I am the Vice Provost for Undergraduate Education at Arizona State University ("ASU"). As Vice Provost, I collaborate with units across ASU to provide leadership for university-wide curriculum and student success projects. I have personal knowledge of, and supervise a team implementing, ASU's processes to track students' progress toward their degree programs.

3.     I refer to the pseudonym John Doe ("John") in this Declaration to maintain that student's anonymity. I know the student's true name and identifying information and reviewed that student's academic record.

4.     John first enrolled at ASU in the Fall 2018 semester with a declared major in Chemical Engineering pursuing a Bachelor of Science in Engineering.

5.     John changed his major in 2019 to pursue a Bachelor of Science in Psychology.

6.     John has an unexplained three-year gap in his academic record from the Spring 2020 semester to the Spring 2023 semester. He did not enroll in any classes at ASU in that span.

7.     He later indicated that he wanted to add a concurrent major in Civil Engineering.

8.     ASU informed John in February 2023 that he must enroll in PSY 290 during the Summer 2023 term to avoid a required change in his major. John did not enroll, so ASU again informed John in July 2023 that he was off-track for his Psychology degree and must successfully complete PSY 230 (Fall 2023) and PSY 290 (Spring 2024) to remain in the degree program.

9.     John did not meet those requirements.

10. In his time at ASU, John twice unsuccessfully took PSY 230. John's undergraduate academic advisor informed John in August 2023 that he must petition to take PSY 230 a third time to remain in the Psychology degree program.

11. John did not remedy the conditions making him off-track for his Psychology degree, so ASU administratively changed John's degree program in November 2023. ASU removed John from the Psychology program and placed him into the Bachelor of Arts in Interdisciplinary Studies program.

12. Interdisciplinary Studies is the default program into which ASU moves students pursuing Bachelor of Science in Psychology degrees in situations where they are not on track for their degree. To receive a Bachelor of Arts in Interdisciplinary Studies, the student must declare two concentration areas.

13. John has not yet declared his two concentration areas for the Interdisciplinary Studies degree. He also has not successfully completed the required courses required for him to return to the Psychology degree (PSY 230 and 290). Without an academic plan in place, John is not currently advancing toward obtaining any degree.

14. A true and correct copy of John's unofficial transcript (redacted to protect his identity), which includes his enrollment history and grades, is attached as **Exhibit 1**. An official transcript will contain the same information.

15. John has successfully completed coursework (without withdrawing or failing all classes) in seven terms since he enrolled: Fall 2018, Spring 2019, Summer 2019, Fall 2019, Spring 2023, Fall 2023, and Fall 2024. [Ex. 1.]

16. ASU offers classes in the fall, spring, and summer terms. ASU has offered classes in 19 terms since John enrolled: Fall 2018, Spring 2019, Summer 2019, Fall 2019, Spring 2020, Summer 2020, Fall 2020, Spring 2021, Summer 2021, Fall 2021, Spring 2022, Summer 2022, Fall 2022, Spring 2023, Summer 2023, Fall 2023, Spring 2024, Summer 2024, and Fall 2024.

2

17.    On a student's transcript:

a.    Grades of "E" are assigned to students who fail the course.

b.    Grades of "EN" are assigned to students who fail the course and never participated in the course.

c.    Grades of "EU" are assigned to students who fail the course and did not complete the course.

d.    Grades of "W" are assigned to students who withdraw from the course.

e.    Grades of "NR" are assigned to students who have not yet completed a course, such that there is "No Report" of a grade at the time the transcript was run.

18.    In both the Spring 2020 and Spring 2024 terms, John received a failing grade in each of his classes. [Ex. 1.]

19.    John's current cumulative GPA is 2.05.

20.    John has completed 78 credit hours (out of an attempted 107 credit hours). Typically, a student with 78 credit hours would be considered a junior. Given his lack of academic plan, however, it is not clear that John is on track to graduate within the next two years.

21.    I cannot assess how many more credit hours John must complete to earn a degree because John does not currently have an academic plan.

22.    Registration for the Fall 2024 term began on February 29, 2024. As of July 8, 2024, John had not registered for Fall 2024 classes.

23.    In August 2024, John enrolled in three online courses during the Fall 2024 term, with permission from ASU. As of today's date, he has completed one of these courses and is in the process of taking the other two. [Ex. 1.]

24.    For the Spring 2025 term, students may register for classes until the first day of classes, which is January 13, 2025.

3

25.    ASU does not include information about student discipline on a student's transcript. Nothing on John's academic transcript will refer to the Title IX disciplinary proceedings, the findings, or the resulting discipline. As seen in Exhibit 1, there is no reference to "sexual misconduct" on John's transcript.

26.    To view a student's disciplinary record, an employer would need to request access to the student's disciplinary record from the student. The student may choose whether to release the record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this   5 December 2024

Anne K. Jones, D. Phil.

4

# EXHIBIT 1

# Arizona State University
### Unofficial Transcript

**Name:** ▮▮▮▮▮▮▮
**Student ID:** ▮▮▮▮▮▮

Print Date: 11/26/2024
External Degrees
BASIS Phoenix
High School Diploma    05/24/2018

### Test Credits
*2018 Fall*

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| HST 110 | United States Since 1865 | | 3.000 | Y | |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| HST 109 | United States to 1865 | | 3.000 | Y | |
| BIO 100 | The Living World | | 4.000 | Y | |
| GCU 102 | Introduction Human Geography | | 3.000 | Y | |
| PSY 101 | Introduction to Psychology | | 3.000 | Y | |

| | | | | | |
|---|---|---|---|---|---|
| Course Trans GPA: | 0.000 | Transfer Totals: | 0.000 | 16.000 | 0.000 |

### Beginning of Undergraduate Record

### 2018 Fall

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| ASU 101-CHE | The ASU Experience | 1.000 | 1.000 | A | 4.000 |
| ENG 101 | First-Year Composition | 3.000 | 3.000 | A- | 11.001 |
| FSE 100 | Introduction to Engineering | 2.000 | 2.000 | B | 6.000 |
| HST 104 | West Civ: French Rev to EU | 3.000 | 3.000 | A | 12.000 |
| HST 110 | United States Since 1865 | 3.000 | 0.000 | A- | 0.000 |
| Repeated: | Repeat - Excluded from GPA and Hours Earned | | | | |
| MAT 117 | College Algebra | 3.000 | 3.000 | A | 12.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 3.75 | Term Totals | 15.000 | 12.000 | 45.001 |
| Cum GPA: | 3.75 | Cum Totals | 15.000 | 28.000 | 45.001 |

Academic Standing: Good Standing
Term Honor:      Dean's List

### 2019 Spring

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| BIO 181 | General Biology I | 4.000 | 4.000 | A | 16.000 |
| CHM 113 | General Chemistry I | 4.000 | 4.000 | B | 12.000 |
| ENG 102 | First-Year Composition | 3.000 | 3.000 | A | 12.000 |
| MAT 170 | Precalculus | 3.000 | 3.000 | A | 12.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 3.71 | Term Totals | 14.000 | 14.000 | 52.000 |
| Cum GPA: | 3.73 | Cum Totals | 29.000 | 42.000 | 97.001 |

Academic Standing: Good Standing
Term Honor:      Dean's List

### 2019 Summer

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| CHM 116 | General Chemistry II | 4.000 | 4.000 | C | 8.000 |
| MAT 265 | Calculus for Engineers I | 3.000 | 3.000 | C | 6.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 2.00 | Term Totals | 7.000 | 7.000 | 14.000 |
| Cum GPA: | 3.36 | Cum Totals | 36.000 | 49.000 | 111.001 |

### 2019 Fall

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| CHM 233 | General Organic Chemistry I | 3.000 | 0.000 | E | 0.000 |
| Repeated: | Repeat - Excluded from GPA and Hours Earned | | | | |
| CHM 237 | Gen Organic Chemistry Lab I | 1.000 | 1.000 | B | 3.000 |
| MAT 242 | Elementary Linear Algebra | 2.000 | 0.000 | W | 0.000 |
| MAT 266 | Calculus for Engineers II | 3.000 | 0.000 | W | 0.000 |
| PHY 121 | Univ Physics I: Mechanics | 3.000 | 3.000 | C | 6.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 2.25 | Term Totals | 7.000 | 4.000 | 9.000 |
| Cum GPA: | 3.24 | Cum Totals | 43.000 | 53.000 | 120.001 |

Academic Standing: Good Standing

### 2020 Spring

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| CEL 100 | Great Ideas Politics & Ethics | 3.000 | 0.000 | EN | 0.000 |
| Repeated: | Repeat - Excluded from GPA and Hours Earned | | | | |
| CRJ 201 | Crime Control Policies | 3.000 | 0.000 | E | 0.000 |
| Repeated: | Repeat - Excluded from GPA and Hours Earned | | | | |
| PSY 230 | Introduction to Statistics | 3.000 | 0.000 | EU | 0.000 |
| Repeated: | Repeat - Excluded from GPA and Hours Earned | | | | |
| PSY 350 | Social Psychology | 3.000 | 0.000 | E | 0.000 |
| Repeated: | Repeat - Excluded from Hours Earned | | | | |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 0.00 | Term Totals | 12.000 | 0.000 | 0.000 |
| Cum GPA: | 3.00 | Cum Totals | 55.000 | 53.000 | 120.001 |

Academic Standing: Good Standing

### 2023 Spring

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| CEL 100 | Great Ideas Politics & Ethics | 3.000 | 3.000 | A- | 11.001 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| CHM 233 | General Organic Chemistry I | 3.000 | 0.000 | E | 0.000 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| CRJ 201 | Crime Control Policies | 3.000 | 3.000 | A | 12.000 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| MAT 266 | Calculus for Engineers II | 3.000 | 3.000 | C | 6.000 |
| PHY 122 | University Physics Lab I | 1.000 | 1.000 | B | 3.000 |

# Arizona State University
### Unofficial Transcript

**Name:** <span>███████████</span>
**Student ID:** <span>███████</span>

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| PSY 230 | Introduction to Statistics | 3.000 | 3.000 | D | 3.000 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 2.19 | Term Totals | 16.000 | 13.000 | 35.001 |
| Cum GPA: | 2.77 | Cum Totals | 71.000 | 66.000 | 155.002 |

Academic Standing: Good Standing

## 2023 Fall

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| MAT 267 | Calculus for Engineers III | 3.000 | 3.000 | D | 3.000 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| MAT 275 | Modern Differential Equations | 3.000 | 0.000 | E | 0.000 |
| PHY 131 | Univ Physics II: Elctrc/Magnet | 3.000 | 0.000 | EU | 0.000 |
| Repeated: | Repeat - Excluded from Hours Earned | | | | |
| PSY 350 | Social Psychology | 3.000 | 3.000 | A | 12.000 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| SOC 101 | Introductory Sociology | 3.000 | 0.000 | EU | 0.000 |
| SOS 314 | Basic Energy Science | 3.000 | 3.000 | B | 9.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 1.33 | Term Totals | 18.000 | 9.000 | 24.000 |
| Cum GPA: | 2.42 | Cum Totals | 89.000 | 75.000 | 179.002 |

Academic Standing: Good Standing

## 2024 Spring

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| ECN 211 | Macroeconomic Principles | 3.000 | 0.000 | EN | 0.000 |
| GLG 101 | Intro to Geology I (Physical) | 3.000 | 0.000 | E | 0.000 |
| MAT 267 | Calculus for Engineers III | 3.000 | 0.000 | E | 0.000 |
| Repeated: | Repeat - Excluded from Hours Earned | | | | |
| PHY 131 | Univ Physics II: Elctrc/Magnet | 3.000 | 0.000 | E | 0.000 |
| Repeated: | Repeat - Included in GPA and Hours Earned | | | | |
| PSY 341 | Developmental Psychology | 3.000 | 0.000 | E | 0.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 0.00 | Term Totals | 15.000 | 0.000 | 0.000 |
| Cum GPA: | 2.01 | Cum Totals | 104.000 | 75.000 | 179.002 |

Academic Standing: Good Standing

## 2024 Fall

| Course | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|
| PSY 394 | Special Topics | 3.000 | 3.000 | B+ | 9.999 |
| Course Topic: | Fndtns Human Sexual Behavior | | | | |
| PSY 453 | Organizational Behavior | 3.000 | 0.000 | NR | 0.000 |
| REL 321 | Religion in America | 3.000 | 0.000 | NR | 0.000 |

| | | Attempted | Earned | | Points |
|---|---|---|---|---|---|
| Term GPA: | 3.33 | Term Totals | 3.000 | 3.000 | 9.999 |
| Cum GPA: | 2.05 | Cum Totals | 107.000 | 78.000 | 189.001 |

END OF TRANSCRIPT