Clerk of the Superior Court
\*\*\* Filed \*\*\*

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2024-000272-001 DT                                                  01/07/2025

|  |  |
|---|---|
|  | CLERK OF THE COURT |
| HONORABLE JOSEPH P. MIKITISH | J. Eaton |
|  | Deputy |

| | |
|---|---|
| JOHN DOE | JOSHUA M ERNST |
| v. | |
| ARIZONA BOARD OF REGENTS (001) | KRISTIN L WINDTBERG |
| | JUDGE MIKITISH |
| | REMAND DESK-LCA-CCC |

MINUTE ENTRY

Administrative Case Numbers: 2023198501 & 2023198502.

The Court has received and reviewed Appellant's Second Motion for Stay of Agency Decision filed December 5, 2024 by John Doe (John); the Response thereto filed by the Appellee Arizona Board of Regents (the Board) on December 16, 2024; the Reply filed by John on December 19, 2024; the Motion to Strike the Reply filed by the Board on December 27, 2024; the Response to the Motion to Strike filed by John on December 31, 2024; and the Reply in Support of the Motion to Strike filed on January 6, 2024.

I. BACKGROUND

This matter stems from sexual contact between John and Jane Roe (Jane) on August 21, 2021, at Arizona State University (ASU or the University). John contends that the contact was consensual. Jane alleges that it was not. On social media, Jane asserted that John sexually assaulted her. John requested a No Contact Directive from ASU, which was issued on September 23, 2021.

On September 28, 2021, Jane filed a Title IX Complaint against John and ASU alleging that John digitally penetrated her vagina without consent and attempted to penetrate her vagina

Exhibit 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2024-000272-001 DT                                                                                      01/07/2025

with his penis but was unsuccessful. ASU began an investigation in the fall of 2021, but the Complaint was dismissed in early 2022 because John was not an enrolled student.

ASU reopened the Complaint in March 2023 after John reenrolled as a student. The investigation continued through 2023, and a hearing was held on January 9, 2024, pursuant to the University's Interim Grievance Process for Formal Complaints of Title IX Sexual Harassment (Grievance Process). Jane and John both testified, and each party through their respective advisors had the opportunity to cross-examine the other.

On January 30, 2024, the Hearing Officer issued a Determination Regarding Responsibility finding that John's alleged conduct did not constitute Title IX sexual harassment. Jane appealed the decision. Under the Grievance Process, the parties were provided the opportunity to provide an appeal and a statement in support of the outcome on the same date. Jane submitted an appeal, but John did not submit a statement in support of the outcome. The Appeal Decision Maker issued a determination granting the appeal based on procedural irregularity due to the Hearing Officer's failure to include credibility determinations. The Appeal Decision Maker remanded the matter to the Hearing Officer.

On April 19, 2024, the Hearing Officer determined that a rehearing was not necessary to issue an amended determination. On May 6, 2024, the Hearing Officer issued an amended determination (the Amended Determination) regarding responsibility including credibility determinations. Those credibility determinations relied in part on the conclusion that John's account remained largely consistent while Jane's account changed in significant ways. The Hearing Officer concluded, in part, that Jane's text messages with John differed from her allegations in the Complaint.

The Hearing Officer provided the parties until May 21, 2024, to appeal the Amended Determination or file a statement in support of the amended determination. Jane requested an extension of time to file a second appeal which ASU granted. On May 23, 2024, Jane filed a second appeal. John did not file a statement in support of the amended determination. Jane argued in part that the Hearing Officer's credibility determinations were incorrect because John made contradictory statements that were not identified in the Amended Determination.

On June 10, 2024, the Appeal Decision Maker granted, in part, Jane's appeal (the Second Appeal Decision). The Second Appeal Decision concluded that a portion of the Amended Determination was not supported by the evidence and hearing record. The Second Appeal Decision concluded that John's eyes were closed during the sexual contact and therefore he could not have witnessed Jane nodding her head yes to his actions. The Second Appeal Decision imposed a one-year suspension on John from being physically present on ASU's campus and

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2024-000272-001 DT                                                01/07/2025

required John to complete training related to consent and reviewed the training with the Office of Student Rights and Responsibilities.

On July 8, 2024, ASU accepted the Second Appeal Decision and issued the Final Decision to John. John filed a Notice of Appeal for Judicial Review of Administrative Decision on July 23, 2024, and on July 31, 2024 filed an initial Motion for Stay of Agency Decision. John and ASU agreed to participate in mediation and John withdrew the initial Motion to Stay. The parties were unable to reach a mutual agreement to resolve the case. As noted, on December 5, 2024, John filed a second Motion to Stay.

## II.   LEGAL STANDARD

The Administrative Review Act ("ARA") provides that the Superior Court may stay an Administrative Decision, in whole or in part, pending final disposition of the case for good cause shown. A.R.S. § 12-911(A)(1). Good cause requires the Petitioner to show a colorable claim *and* that the balance of harm favors granting the stay. Rule 3(B), Rules of Procedure for Judicial Review of Administrative Decisions; *P & P Mehta LLC v. Jones*, 211 Ariz. 505, 507 ¶ 25 (App. 2005). A colorable claim is one "demonstrating, as regards substantive merit, a seemingly valid, genuine, or plausible claim under the circumstances of the case." Rule 3(B) (1), Rules of Procedure for Judicial Review of Administrative Decisions.

Further, the ARA provides that a final decision of an administrative agency must be affirmed unless it is "contrary to law, is not supported by substantial evidence, arbitrary and capricious, or is an abuse of discretion." A.R.S. § 12-910(F); *Berenter v. Gallinger,* 173 Ariz. 75, 77 (App. 1992). A decision that is supported by substantial evidence may not be set aside as arbitrary, capricious, or an abuse of discretion. *Smith v. Ariz. Long Term Care Syst.*, 207 Ariz. 217, 220 ¶ 14 (App. 2004). An agency's decision will be found to be supported by substantial evidence as long as the "decision is supported by the record," even if the record could also support a different conclusion. *Gaveck v. Ariz. State Board of Podiatry Examiners*, 222 Ariz. 433, 436 ¶ 11 (App. 2009). The Appellate Court will review conclusions of law *de novo*. *Rail N Ranch Corp. v. Hassell*, 177 Ariz. 487, 490 (App. 1994). A decision is an abuse of discretion if it is based on an error of law. *Grant v. Ariz. Public Service Company*, 133 Ariz. 434, 455-56 (1982).

## III.   DISCUSSION

A. Does the Motion Present a Colorable Claim?

John argues that, on several grounds, he has a colorable claim that the Final Decision is an abuse of discretion, unsupported by substantial evidence, arbitrary and capricious, the result of gender and sex bias, riddled with procedural irregularities, and rendered contrary to ASU

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2024-000272-001 DT  01/07/2025

policy, as well as State and Federal law. For purposes of this ruling, the Court focuses on John's argument that the Final Decision is unsupported by substantial evidence. He argues that the Second Appeal Decision improperly changed the factual determination of the Hearing Officer by concluding that John's eyes were closed during the sexual contact and that therefore he could not have seen Jane's nonverbal consent. John argues that the evidence at the hearing in fact showed that he witnessed Jane nodding her head yes and did not have his eyes closed. He argues that Jane also did not testify that John's eyes were closed during the sexual contact. Therefore, he concludes that no substantial evidence supports the Final Decision.

The Board argues that the Appeal Decision Maker reviewed the entire case file and modified the Second Amended Decision to find John responsible because she found the Decision was not reasonably justified by the evidence. The Board argues that the Appeal Decision Maker determined that neither prong of the definition of consent was made because Jane did not give verbal consent and John's testimony that he saw Jane nodding was inconsistent with his testimony that his eyes were closed and that he could not see.

The ultimate outcome on this issue will depend on a review of the record to determine whether the Appeal Decision Maker was correct in determining that the testimony supported that John's eyes were closed during the sexual contact. Without the record fully available at this time, John's claims are plausible that the evidence does not support the Decision. Therefore, this Court must conclude that John has set forth at least one colorable claim.

B. Does the Motion Establish that the Balance of Harms Weighs in John's Favor?

John argues that he will suffer significant harm if the Final Decision is not stayed. He argues he will lose the opportunity to continue with post-secondary education at ASU, face the possibility that he may be unable to pursue meaningful educational opportunities elsewhere during the pendency of the appeal, and that his professional prospects will be harmed. He argues that prior to the Final Decision, his record at ASU was unblemished and if the Final Decision is not stayed, he will be labeled a sexual predator. He argues that future employers will receive his academic records with the disciplinary finding and a notation of sexual misconduct that will be difficult to explain to employers. He argues that denying the stay will permit the harm to his reputation to persist. John argues that Federal District Courts have determined that the disruption and delay to education, lost opportunity to begin at a career, and the damage to reputation are cognizable as irreparable harm. He further argues that a violation of Title IX itself is enough to establish irreparable harm.

Finally, John argues that a stay of ASU's Final Decision will not harm ASU, Jane, or any other party. He argues that the Hearing Officer twice determined that he was not responsible for the allegations and that he was the first to file a No Contact Directive.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2024-000272-001 DT                                                                01/07/2025

The Board argues that the balance of hardship tips toward denying the stay. It argues that granting a stay will not remedy any reputational harm John alleges. It argues that John's assertion that he would lose an "opportunity to continue with post-secondary education at ASU" is implausible given his academic record. It argues that John changed majors during his sophomore year, and then had a "three-year gap" in his academic record from spring 2020 through spring 2023. It argues that when John returned to ASU, he failed to enroll in required courses and to complete a required course multiple times, taking him off track for completing his degree. The Board argues that ASU administratively removed him from his degree program and placed him in an interdisciplinary studies program in November 2023. It argues that John has not proceeded with the requirements to obtain the interdisciplinary studies degree. It argues that he has not been a good student academically.

The Board argues that John is more than two years away from graduating, has no clear path to graduation, and no identifiable career path. The Board argues that any assertion of harm to his future academic or job prospects is speculative or untenable. It argues that he can mitigate claimed harm by taking classes at another educational institution and that his claims that he may not be able to do so are unsupported.

The Board argues that it will suffer irreparable harm because it has legal obligations to adhere to its procedures, and to protect students, staff, and the greater community to keep its campuses safe. It argues that the University has a strong interest in enforcing its Title IX Procedures and in carrying out disciplinary measures imposed through the Grievance Process. It argues that it has an affirmative obligation to Jane to prevent a recurrence of a Title IX violation. It further argues that allowing John back on campus could cause emotional distress to Jane as she takes classes and participates in the campus environment.

In his reply, John reargues that he has presented a colorable claim and that the Board mischaracterizes his academic performance and impact on campus. He notes that he never violated the No Contact Directive and has remained on campus during the entire three years of the investigation.

The Court finds that regardless of his past academic struggles, John will be harmed by the failure to attend and take classes and make academic progress at the educational institution of his choice, ASU. The University admitted him, and he appears to remain in academic good standing. The inability to continue to take classes that he desires must be seen as a detriment he will suffer. In fact, the fact that ASU sanctioned him by suspending his ability to be on campus and take classes acknowledges that the Board views the University's actions as a harm.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2024-000272-001 DT                                                              01/07/2025

The Court further finds that ASU has followed the Grievance Process and has supported its position in this Court. Therefore, the University is seeking to protect its policies, students, staff, and community. Whether the remainder of the suspension will be imposed will depend on the outcome of the case. Further there is no evidence that John has not complied with the No Contact Directive in the more than three years since the start of the investigation.

The Board did not provide significant information about the impact to Jane. The likelihood that she will encounter John on campus is unknown given the number of campuses, colleges, and amenities at ASU. Given the No Contact Directive that remains in effect, the Court anticipates that the potential for interaction between John and Jane to be a less likely expected harm than the certainty of harm to John by his inability to be on campus to take classes. Therefore, the Court concludes that the balance of harms weighs in favor of John.

   C. Motion to Strike

Based upon the narrow scope of this Court's ruling, the Court finds that the Motion to Strike is moot and therefore is denied.

**V.   IS A BOND REQUIRED?**

The Rule provides that the Court may impose a bond to ensure the payment of any obligations and maintain the status quo. The Court finds that a bond would not serve those purposes in this case. The Court finds, however, that it is appropriate to include the No Contact Directive as a part of this Court's ruling. Failure to comply with this requirement will be not only a violation of the School's Directive, but also of this Court Order and may be sanctioned as such.

**IV.   CONCLUSION**

Based on the foregoing,

IT IS ORDERED granting the Motion to Stay the Final Decision, until the final ruling in this Judicial Review of Administrative Decision action, to the extent that the Final Decision imposes a sanction on John to remain off ASU's campus and to complete trainings related to consent.

NOTICE: LC cases are not under the e-file system. As a result, when a party files a document, the system does not generate a courtesy copy for the Judge. Therefore, you will have to deliver to the Judge a conformed courtesy copy of any filings.