**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe,<br><br>              Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>              Defendants. | No. CV-24-01829-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendants Arizona Board of Regents (the "Board"), Dr. Joanne Vogel, Ms. Jodi Preudhomme, Ms. Elizabeth Ojeda, and Ms. Dawn Russo's (the "Individual Defendants") (collectively "Defendants") Motion to Dismiss (Doc. 76). Also before the Court is Plaintiff John Doe's ("Plaintiff") Motion to File a Sur-Reply (Doc. 81). Having reviewed the briefing, the Court **denies** Plaintiff's Motion to File a Sur-Reply and **grants in part and denies in part** Defendant's Motion to Dismiss.

## I.      BACKGROUND

This case arises from a sexual encounter between Plaintiff and Jane Roe ("Jane") on August 21, 2021 in Jane's car on Arizona State University's ("ASU") campus. (Doc. 79 at 1.)  Plaintiff and Jane filed student conduct complaints against one another with ASU's Office of Student Rights and Responsibilities regarding the encounter. (*Id.*) Jane then filed a Title IX Complaint against Plaintiff with the school and Plaintiff was eventually adjudicated responsible for sexual misconduct. (*Id.* at 2.)  Plaintiff's Second Amended Complaint ("SAC") contests this finding and argues it is the result of illegal discrimination

1    and unfair disciplinary procedures.  (Doc. 62.)  Defendants now move to dismiss the SAC

2    pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Doc. 76.)

## II.    LEGAL STANDARD

4           To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

5    the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the

6    claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

7    of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*,

8    550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41,

9    47 (1957)).  This notice exists if the pleader sets forth "factual content that allows the court

10   to draw the reasonable inference that the defendant is liable for the misconduct alleged."

11   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a

12   cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

13          Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory

14   or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v.*

15   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a

16   cognizable legal theory will survive a motion to dismiss if it contains sufficient factual

17   matter, which, if accepted as true, states a claim to relief that is "plausible on its face."

18   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plausibility does not equal

19   "probability," but requires "more than a sheer possibility that a defendant has acted

20   unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a

21   defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'"

22   *Id.* (quoting *Twombly*, 550 U.S. at 557).

23          In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations

24   are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins*

25   *v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as

26   factual allegations are not given a presumption of truthfulness, and "conclusory allegations

27   of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto*

28   *v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence

1  outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States*
2  *v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider
3  materials—documents attached to the complaint, documents incorporated by reference in
4  the complaint, or matters of judicial notice—without converting the motion to dismiss into
5  a motion for summary judgment." *Id.* at 908.

6  **III.  DISCUSSION**

7      Plaintiff's SAC asserts the following claims against Defendants: (1) violation of
8  Title IX against the Board (Claim I); (2) violation of 42 U.S.C. § 1983 and the Due Process
9  and Equal Protection Clauses of the U.S. Constitution against the Individual Defendants in
10  their individual and official capacities (Claim II); (3) breach of contract against the Board
11  (Claim III); (4) breach of the covenant of good faith and fair dealing against the Board
12  (Claim IV); and (5) intentional infliction of emotional distress ("IIED") against the Board
13  (Claim V). (Doc. 62 at 45–63.) Defendants move to dismiss each claim pursuant to Rule
14  12(b)(6). (Doc. 76 at 1.) Additionally, Defendants argue a portion of Plaintiff's federal
15  and state claims are "time barred by applicable statutes of limitations and Arizona's notice
16  of claim statute." (*Id.* at 6.)

17      **A.  Claims for Relief**

18          1.  *Title IX*

19      Defendants argue Plaintiff's Title IX claim fails to establish a plausible inference of
20  sex-based discrimination. (Doc. 76 at 10.) The Court disagrees.

21      "To state a Title IX claim, a plaintiff must plead that: (1) the defendant educational
22  institution[] receives federal funding; (2) the plaintiff was excluded from participation in,
23  denied the benefits of, or subjected to discrimination under any education program or
24  activity[;] and (3) the latter occurred on the basis of sex." *Schwake v. Arizona Bd. of
25  Regents*, 967 F.3d 940, 946 (9th Cir. 2020). "To survive a motion to dismiss, a Title IX
26  plaintiff need only provide *enough facts* to state a claim to relief that is plausible on its
27  face." *Id.* at 947 (emphasis in original) (citation modified). However, "sex discrimination
28  need not be the only plausible explanation or even the most plausible explanation for a

Title IX claim to proceed." *Doe v. Regents of Univ. of Cal.*, 23 F.4th 930, 936 (9th Cir. 2022) (citation modified).

When evaluating the plausibility of similar Title IX claims, the Ninth Circuit looks to the following: (1) "allegations of background indicia of sex discrimination, namely, the pressure that the University faced concerning its handling of sexual misconduct complaints and gender-based decisionmaking against men in sexual misconduct disciplinary cases"; and (2) "the allegations concerning the disciplinary case against [the plaintiff]." *Schwake*, 967 F.3d at 948. Both allegations are necessary to survive a motion to dismiss. *Doe*, 23 F.4th at 939.

### a. Background Indicia of Sex Discrimination

Defendants argue that Plaintiff's evidence of background indicia of sex discrimination is conclusory and thus insufficient to survive a motion to dismiss. (Doc. 76 at 9.) The Court disagrees.

In *Schwake*, the Ninth Circuit clarified the level of detail necessary to successfully plead evidence of background indicia of sex discrimination. 967 F.3d at 949. There, the Plaintiff—a male student similarly bringing a Title IX discriminatory claim regarding a university's handling of sexual misconduct complaints—alleged that the university faced external pressure due to a Department of Education ("DOE") investigation for possible mishandling of sexual misconduct complaints. *Id.* at 948. The plaintiff also alleged that "male respondents in student disciplinary proceedings involving alleged sexual harassment and misconduct cases at the University are invariably found guilty, regardless of the evidence or lack thereof." *Id.* at 949 (citation modified). The plaintiff added that he was "aware of recent University disciplinary cases against male respondents in alleged sexual misconduct cases who were all found guilty regardless of the evidence or lack thereof." *Id.* (citation modified). The Ninth Circuit held that "[t]he district court was not free to ignore this non-conclusory and relevant factual allegation." *Id.*

The Ninth Circuit rejected the argument that these allegations were conclusory unless the plaintiff included percentages of male students found guilty per semester. *Id.* It

explained that "[t]he absence of this level of detail from [the plaintiff's] complaint does not render [the plaintiff's] allegation conclusory or insufficient." *Id.* The court reasoned that (1) "[t]here is no heightened pleading standard for Title IX claims," and (2) "[i]t may be difficult for a plaintiff to know the full extent of alleged discrimination in decisionmaking before discovery allows a plaintiff to unearth information controlled by the defendant." *Id.* Therefore, the Ninth Circuit held that the plaintiff's allegations established background indicia of sex discrimination relevant to a Title IX claim.

Plaintiff makes a similar showing here. Plaintiff alleges the following: (1) Defendants faced a history of being under investigation by the DOE regarding Title IX investigations; (2) Defendants faced two DOE Office of Civil Rights complaints and investigations that "were contemporaneous to the underlying incident"; (3) the majority of individuals reporting sexual misconduct in 2023 were female against males, resulting in a disproportionate amount of males being found responsible; (4) Defendants faced a history of accusations from ASU students that the University is "not doing enough when alleged incidents of sexual misconduct are reported"; and (5) there were ongoing protests resulting in "ASU frequently caving into pressure and meeting the demands requested by female alleged victims and survivors." (Doc. 62 at 41–43.) These allegations parallel those in *Schwake*. Therefore, the Court finds that Plaintiff's SAC sufficiently establishes a background indicia of sex discrimination.

### b. Plaintiff's Disciplinary Case

Defendants also argue that Plaintiff does not allege specific facts from his case indicating sex-based discrimination. (Doc. 76 at 11.) The Court disagrees.

Plaintiff alleges that both he and Jane initiated conduct complaints against the other under ASU's Student Code of Conduct regarding the same sexual encounter. (Doc. 62 at 21.) Plaintiff alleges ASU "promptly closed Jane's conduct case against [Plaintiff] because it recognized that the conduct Jane complained of, despite being the same conduct that [Plaintiff] complained of, fell under Title IX." (Doc. 62 at 25.) Thus, Plaintiff states Ms. Ojeda gave Jane "clear instructions" to file a written Title IX complaint against

Plaintiff with ASU's Title IX office. (*Id.*)  However, Plaintiff states his conduct complaint was not closed. (*Id.* at 21.)  He states ASU investigated his conduct complaint against Jane only for "physical harm" and "harassment" and not sexual misconduct. (*Id.*)  Because of this, Plaintiff states he "was not afforded procedural protection due under Title IX." (*Id.* at 22.)  Plaintiff alleges ASU treated his "complaint differently than Jane's based solely on the sex of the individuals making the complaint." (*Id.*)

Plaintiff also alleges that after the initial hearing found that he was not responsible for sexual misconduct, Jane appealed and "advised ASU that she would pursue both Title IX and Clery Act claims—which carry a potential fine of $69,733 per violation—against ASU for allegedly violating her rights during the process." (*Id.* at 30–31.)  Plaintiff states Jane also threatened to file these complaints with the DOE. (*Id.* at 31.)  On appeal, the Appeal Decision Maker, Dr. Vogel, remanded for a rehearing based on procedural irregularities. (*Id.* at 32.)  Plaintiff alleges that Dr. Vogel was biased toward Jane and female complainants, and he had no opportunity to object to her reviewing the appeal. (*Id.* at 31.)  On remand, Plaintiff was once again found not responsible for sexual misconduct. (*Id.*)  However, Plaintiff alleges ASU granted Jane an impermissible second appeal. (*Id.* at 34.)  Dr. Vogel also reviewed the second appeal. (*Id.*)  Plaintiff states he again did not have an opportunity to object to Dr. Vogel serving as the Appeal Decision Maker. (*Id.*)  Plaintiff alleges that on appeal Dr. Vogel ignored the initial investigator's findings and evidence favoring Plaintiff. (*Id.* at 36.)  Dr. Vogel then found that Plaintiff committed sexual misconduct and sanctioned Plaintiff with a one-year suspension. (*Id.*)  Plaintiff states he was not given a meaningful opportunity to respond to these appeals or provide written input prior to Dr. Vogel overturning the initial findings. (*Id.* at 37.)

The Court finds that these allegations support an inference of gender bias.  Plaintiff sufficiently alleges asymmetrical treatment of his sexual misconduct complaint compared to a similarly situated female.  *See Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019) (holding that "[w]ithout nonconclusory allegations that the male students were treated any differently than similarly situated female students based on sex" there was no

plausible inference of gender bias); *see also Doe*, 23 F.4th at 939 (holding that asymmetrical enforcement allegations can "lead to a plausible inference of discrimination on the basis of sex, at least when considered in conjunction with the other well-pleaded facts regarding external pressures and specific instances of bias"). Additionally, Plaintiff alleges a one-sided appeal investigation where Dr. Vogel ignored favorable evidence, reversed two previous findings of no responsibility, and where Plaintiff was neither permitted to object to Dr. Vogel's review nor her findings. *See Schwake*, 967 F.3d at 951 (holding that the plaintiff's "allegations of the University's one-sided investigation support an inference of gender bias").

Taking these allegations as true and viewing them in light most favorable to the Plaintiff, the Court finds that Plaintiff's allegations are consistent with his allegations that Defendants treated male respondents in sexual misconduct disciplinary proceedings differently. Thus, Plaintiff plausibly alleges a Title IX claim. Defendants' Motion as to this claim is denied.

## 2. *§ 1983*

Defendants argue Plaintiff fails to state a § 1983 claim against the Individual Defendants because they are immune, and Plaintiff has not "stated a cognizable claim that the Individual Defendants violated his rights under the Due Process or Equal Protection clauses." (Doc. 76 at 16.) The Court agrees in part.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were clearly established." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) (citation modified). "Thus, a qualified immunity determination involves three inquiries: (1) identification of the right that has allegedly been violated, (2) the determination of whether that right was

1    clearly established such that a reasonable official would have known of it, and (3) the

2    determination of whether a reasonable officer would have believed that the challenged

3    conduct was lawful." *Id.*

4                                a.   The Due Process Clause

5            "To state a prima facie substantive or procedural due process claim, one must, as a

6    threshold matter, identify a liberty or property interest protected by the Constitution."

7    *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014).  However, the U.S.

8    Constitution "itself creates no property interests;" instead, such interests are based in state

9    law. *Id.*

10           As Defendants aptly note, Plaintiff asserts a myriad of liberty and property interests.

11   (Doc. 76 at 18.)    Ultimately, Plaintiff asserts Defendants deprived him of "his

12   constitutionally protected liberty and property interests in his education and reputation."

13   (Doc. 62 at 54.)  Additionally, Plaintiff asserts Defendants deprived him of due process

14   when he "could not respond to Jane's First and Second Appeal" and "was foreclosed from

15   appealing Defendant Dr. Vogel's decision." (*Id.* at 54–55.)  Plaintiff bears the burden of

16   demonstrating that these rights are clearly established under Arizona law.  The Court finds

17   that Plaintiff fails to do so here.

18           In his Response, Plaintiff does not rebut Defendant's argument that Arizona law

19   does not clearly establish a constitutional right to a university education.   Plaintiff's

20   omission is understandable; Arizona law does not guarantee such a right.  *See Unknown*

21   *Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2019 WL 7282027, at *10

22   (D. Ariz. Dec. 27, 2019) (holding that "it seems unlikely that a constitutional right to a

23   university education exists under Arizona law.  And even if such a right does exist, it is not

24   clearly established").  Thus, Plaintiff fails to allege a due process claim regarding his

25   educational interests.

26           Plaintiff also fails to establish a cognizable "stigma-plus" due process claim

27   regarding his reputational interests.  "[T]o prove a deprivation of rights under § 1983

28   pursuant to a 'stigma-plus' due process claim, Plaintiffs must establish: (1) the public

1    disclosure of a stigmatizing statement by a state actor; (2) the accuracy of which is

2    contested; (3) plus the denial of some more tangible interest." *Chaudhry v. Aragón*, 68

3    F.4th 1161, 1171 (9th Cir. 2023).  The denial of a tangible interest occurs when the

4    stigmatizing statement is "made in connection with the termination of employment or the

5    alteration of some right or status recognized by state law." *Wenger v. Monroe*, 282 F.3d

6    1068, 1074 (9th Cir. 2002) (quoting *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1129

7    (9th Cir. 2001)).  Failure to establish any of these elements defeats a "stigma-plus" claim.

8    *Id.*

9          Although Plaintiff's Response alleges Defendants distributed Dr. Vogel's decision

10   letter, Plaintiff's SAC does not make this allegation.  (Doc. 62 at 51–56.)  This failure alone

11   defeats Plaintiff's stigma-plus claim.  *See Doe v. Or. State Univ.*, 614 F. Supp. 3d 847, 860

12   (D. Or. 2022) (finding the individual defendants entitled to qualified immunity because

13   "Plaintiff fails to satisfy even the first prong of the stigma-plus test because his Complaint

14   does not allege that [the university] disclosed his suspension"); *see also Terry v. Maricopa

15   Cnty. Cmty. Coll. Dist.*, 626 F. Supp. 3d 1092, 1098 (D. Ariz. 2022) ("Simply alleging that

16   the government has stigmatized an individual is an insufficient claim because the

17   Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever

18   systems may already be administered by the States." (quoting *Paul v. Davis*, 424 U.S. 693,

19   701 (1976))).

20         Moreover, Plaintiff fails to establish a denial of a sufficient employment interest.

21   The Ninth Circuit explains that "liberty interests protected by the Fourteenth Amendment

22   are implicated only when the government's stigmatizing statements effectively exclude the

23   employee completely from her chosen profession." *Blantz v. Cal. Dep't of Corr. & Rehab.*,

24   727 F.3d 917, 925 (9th Cir. 2013).  Here, Plaintiff fails to allege that he is completely

25   excluded from his chosen profession; he only states he lost his employment with ASU.

26   (Doc. 62 at 52.)  However, "[p]eople do not have liberty interests in a specific employer";

27   stigmatizing statements only deprive a worker of liberty if they bar a plaintiff from *all*

28   employment in their chosen field.  *Id.* (quoting *Llamas*, 238 F.3d at 1128).  Plaintiff does

not allege such a complete exclusion.  Accordingly, Plaintiff fails to allege a due process claim regarding his reputational interests.

Plaintiff also fails to allege a deprivation of meaningful process.  Plaintiff states he was deprived of due process because he could neither respond to Jane's first and second appeals nor appeal Dr. Vogel's final decision.  (Doc. 62 at 54–55.)  The Court disagrees.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Here, the Individual Defendants gave Plaintiff such an opportunity.  As Defendants point out in their Motion, Plaintiff's SAC alleges:

> [Plaintiff] had access to the Evidence File and an opportunity to respond, twice (Doc. 62 ¶¶ 267, 269); he received a Notice of hearing and Charges (*id.* ¶ 285); he was "allowed to call witnesses and provide evidence at the hearing" (*id.* ¶ 291); he testified (*see id.* ¶ 293); he "had the opportunity to cross-examine each party and witness" (*id.* ¶ 292); and he had the opportunity to submit a statement in support of Dr. Aska's Determination and Amended Determination (Doc. 62-2 at 8, § IV(F)(1)).

(Doc. 76 at 19–20.)  Plaintiff does not dispute this process but argues that "Defendants rely on the process [Plaintiff] was afforded *before* Dr. Vogel's involvement."  (Doc. 79 at 19.)  Plaintiff complains that he had no process to address Dr. Vogel's decision.  But this is not true.  Plaintiff is currently pursuing a case in Arizona's superior court to review Dr. Vogel's final administrative decision pursuant to A.R.S. § 12-904.  Accordingly, the Court finds that Plaintiff fails to establish a reasonable inference that the Individual Defendants deprived Plaintiff of meaningful process throughout the disciplinary proceedings.

Based on the foregoing, the Court finds that Plaintiff fails to state a § 1983 claim against the Individual Defendants as it relates to alleged violations of the Due Process Clause.

### b.  The Equal Protection Clause

"To state a claim under section 1983 for a violation of the Equal Protection Clause, a plaintiff 'must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class,' and that plaintiff was

treated differently from persons similarly situated." *Lam v. City & County of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Defendants argue that Plaintiff fails to identify a similarly situated person.  (Doc. 76 at 21.)  The Court disagrees.  As noted above, Plaintiff's SAC alleges that both Jane and Plaintiff initiated conduct complaints with Defendants regarding the same event.  Plaintiff states that Defendants closed Jane's complaint because it pertained to sexual misconduct and directed her to file a Title IX claim.  (Doc. 62 at 25.)  On the other hand, Plaintiff alleges that he told Defendants he was sexually assaulted when initiating his conduct complaint, but Defendants did not close his complaint.  (*Id.* at 21.)  Further, Plaintiff states Defendants only investigated Jane for physical harm and harassment, "despite sexual misconduct being explicitly identified as prohibited conduct" under the Student Code of Conduct Policy.[1]  (*Id.*)  Thus, Plaintiff essentially argues that Defendants readily identified sexual misconduct as the gravamen of Jane's complaint but construed his complaint as only alleging harassment.  The Court finds such allegations plausibly identify discriminatory treatment of similarly situated persons.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct.").

Here, both Plaintiff and Jane are students at ASU, went to the same office to complain of sexual assault based on the same facts, and filed a code of conduct complaint against the other.  Based on the SAC, which the Court assumes is true, it appears the disparate treatment of these complaints is based on gender.  Thus, the Court finds that Plaintiff has sufficiently pleaded a plausible violation of the Equal Protection Clause.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's § 1983 claim against the Individual Defendants as it relates to alleged violations of the Equal

---

[1]  Defendants do not adequately explain why ASU could not have addressed Plaintiff's sexual misconduct allegations under its Student Code of Conduct Policy.  It appears the Policy does contemplate such scenarios: "In sexual misconduct cases, the Dean will endeavor to make the determination within ninety (90) days from the opening of the conduct file."  (Doc. 62-3 at 4.)

Protection Clause.

### c.  Damages and Prospective Relief

Here, Plaintiff brings a § 1983 claim against the Individual Defendants in their "individual and official capacities." (Doc. 62 at 51.) Defendants argue that the Individual Defendants are immune from damages in their official capacities. Plaintiff does not dispute this assertion. (Doc. 79 at 20–21.) Defendants are correct.

"[D]amages are not available from state officials sued in their official capacity under § 1983." *Hoeg v. Newsom*, 728 F. Supp. 3d 1152, 1157 (E.D. Cal. 2024). That is because "the Eleventh Amendment 'bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities.'" *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 923 (D. Ariz. 2019) (quoting *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007)). Accordingly, any § 1983 claim for money damages against the Individual Defendants in their official capacity is dismissed.

However, Plaintiff may seek an award of damages against the Individual Defendants in their "personal capacity," but only against the "official's personal assets." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Additionally, "the Eleventh Amendment bar" does not apply "when private individuals sue state officials in federal court for prospective relief from ongoing violations of federal law, as opposed to money damages." *K.J. ex rel. Johnson v. Jackson*, 127 F.4th 1239, 1251 (9th Cir. 2025) (citation modified). Here, Plaintiff asks the Court to "vacate the decision of ASU to suspend [Plaintiff]" and remove "from his academic record all references to the decision and any other related sanctions or disciplinary actions." (Doc. 62 at 64.) The Ninth Circuit holds that "expungement of information from school records" is a "form of prospective relief" that is not barred by the Eleventh Amendment. *K.J.*, 127 F.4th at 1251.

Accordingly, Plaintiff may seek damages from the Individual Defendants in their individual capacity and may seek the above-mentioned prospective relief. However, this only applies to Plaintiff's § 1983 claim against the Individual Defendants as it relates to alleged violations of the Equal Protection Clause.

1

### 3. *Breach of Contract*

"To state a cause of action for breach of contract, the Plaintiff must plead facts alleging (1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021) (citation modified). "For an enforceable contract to exist, there must be an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (citation modified).

Defendants argue that ASU's policies and procedures cannot create an enforceable contract. (Doc. 76 at 24.) Both parties agree that outside jurisdictions recognize that the relationship between a university and its students is contractual in nature. *See, e.g.*, *Al-Dabagh v. Case W. Rsrv. Univ.*, 777 F.3d 355, 359 (6th Cir. 2015) (Ohio); *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015) (New York); *Becker v. Wash. State Univ.*, 266 P.3d 893, 900 (2011) (Washington). However, as Plaintiff notes, it does not appear Arizona courts have examined this question. (Doc. 79 at 21.) Thus, the Court is skeptical a contract exists between ASU and Plaintiff under Arizona law. But even if there was a contract, the Court is doubtful there is mutual assent.

The Arizona Supreme Court explains that "the ultimate element of contract formation" is "the question whether the parties manifested assent or intent to be bound." *Schade v. Diethrich*, 760 P.2d 1050, 1058 (Ariz. 1988). Here, ASU maintains unilateral control over the terms of its student policies and procedures. In ASU's formal complaint policy, it states:

> The university may amend this document as necessary from time to time. Amendments may apply to grievances ongoing at the time the amendment is made, unless the effect of the amendment is to reduce the rights of either complainants or respondents, in which case the version of this process in effect at the time the formal complaint was made will be followed.

(Doc. 62-2 at 1.) This language demonstrates that ASU does not intend to be bound by these policies. *See Or. State Univ.*, 614 F. Supp. 3d at 861 (finding there was no contract between plaintiff and university because "the provisions of the Code allow [the university]

1  to modify at any time," demonstrating that the university "clearly never manifested assent

2  to be bound" by the Code).

3       Plaintiff argues that ASU's obligation is not illusory because its discretion to amend

4  the policies is not unlimited.  (Doc. 79 at 22–23.)  Even so, ASU still has unilateral power

5  to amend its policies, which is contrary to "traditional contract law."  *See Demasse v. ITT*

6  *Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999) (noting that, under "traditional contract law,"

7  once a contract is formed "a party may no longer unilaterally modify the terms of that

8  relationship").  Thus, Plaintiff fails to evidence the requisite mutual assent necessary for a

9  breach of contract claim.[2]

10      Plaintiff also cites to two cases from this Court in support of his breach of contract

11  claim: *Hannibal-Fisher v. Grand Canyon University*, 523 F. Supp. 3d 1087 (D. Ariz. 2021)

12  and *Little v. Grand Canyon University*, 516 F. Supp. 3d 958 (D. Ariz. 2021).  However,

13  these cases are distinguishable and cut against Plaintiff's claim.

14      In *Hannibal-Fisher*, the plaintiff argued breach of contract based on Grand Canyon

15  University's ("GCU") Enrollment Agreement and Housing Contract.  516 F. Supp. 3d

16  at 1094.  First, as to the Enrollment Agreement, the Court found that a contract for

17  in-person instruction did not exist because the Agreement did not "guarantee any set

18  format" given the "plain language" reserving the right for GCU to make changes of "any

19  nature" to its class offerings.  *Id.* at 1094–95.  Similarly, here, ASU does not guarantee a

20  certain complaint process because the plain language of the policy reserves the right to

21  amend the process as necessary.  Second, as to the breach of the Housing Contract,

22  defendants did not contest the existence of that contract.  *Id.* at 1096.  Thus, unlike as is

23  necessary here, the Court only analyzed whether the plaintiff plausibly alleged a breach of

24  that contract.  *Id.*  Similarly, in *Little*, the Court only assessed whether GCU breached a

25  housing contract—not whether that contract existed.  516 F. Supp. 3d at 964–65.

26      Therefore, both cases do not support Plaintiff's contention that a contract exists

27

28  ---
   [2]  Plaintiff's alternative argument that there is an implied-in-fact contract fails for similar reasons.  *See Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1982) (explaining that "mutual assent" is "necessary" to establish an "implied-in-fact contract").

between ASU and himself.  In fact, *Hannibal-Fisher* undermines this claim.  Accordingly, given the skepticism that a contract even exists under Arizona law between a student and a public university, and ASU's ability to unilaterally amend any alleged contract, the Court finds that there is no contract between ASU and Plaintiff and grants Defendants' Motion as to this claim without prejudice.

### 4.  *Breach of the Covenant of Good Faith and Fair Dealing*

"Arizona law 'implies a covenant of good faith and fair dealing in every contract,' under which 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship."  *Ipro Tech LLC v. Sun W. Mortg. Co.*, No. CV-17-04015-PHX-DLR, 2019 WL 2106417, at *3 (D. Ariz. Mar. 21, 2019) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569–70 (Ariz. 1986)).  Because the Court finds that there is no contract between Plaintiff and ASU, it holds that there is also no covenant of good faith and fair dealing.

Accordingly, the Court finds that Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing and grants Defendants' Motion as to this claim without prejudice.

### 5.  *IIED*

Under Arizona law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 785 (Ariz. 1989) (citation modified). IIED claims have three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

Here, Plaintiff alleges that ASU caused Plaintiff "severe emotional distress" by

"finding [Plaintiff] responsible for sexual misconduct," conducting a flawed appeal process, and "sanctioning John by effectively labeling him as a predatory sexual offender." (Doc. 62 at 62.)  However, the Court is not convinced this behavior is outrageous and extreme.  Behavior amounts to IIED "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford*, 734 P.2d at 585 (quoting Restatement (Second) of Torts § 46 (A.L.I. 1965)).  At most, Defendants' behavior may have been unreasonable and unfair—not beyond all possible bounds of decency.  *See Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 617 (D. Mass. 2016) (dismissing plaintiff's IIED claim based on a university's charge "effectively labeling him as a sexual predator" because it did not "appear to constitute the sort of targeted, deliberate, and malicious conduct that is required for an IIED claim").

Moreover, Plaintiff's allegations only arise to emotional distress, not severe emotional distress.  In Plaintiff's SAC, he states he is "deeply depressed and anxious, has trouble sleeping, and has developed physical maladies as a result of ASU and Defendant [the Board's] conduct."  (Doc. 62 at 63.)  These conclusory statements are insufficient to establish an IIED claim.

Arizona courts have "uniformly insisted that the emotional distress suffered be *severe*."  *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 500–01 (Ariz. Ct. App. 1982) (emphasis in original).  Courts draw a line between conduct causing emotional distress and that causing severe emotional distress.  *Id.* at 501 (citing cases giving examples such as heart attack from nervous exhaustion, fright induced premature birth, writhing in bed in hysteria, and hospitalization for anxiety).  In *Midas*, the court found that the plaintiff's testimony that phone calls "upset her and made her cry, and that she had difficulty sleeping on several occasions after the calls were made" was not "sufficiently severe to warrant the imposition of liability for [IIED]."  *Id.*  The court explained, "[i]t is only where it is extreme that the liability arises.  Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living

among people." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. J (A.L.I. 1965)). The Court finds that Plaintiff's vague allegations of depression, anxiety, struggle sleeping, and "physical maladies" do not establish severe emotional distress.

Accordingly, the Court finds that Plaintiff fails to state an IIED claim and grants Defendants' Motion as to this claim without prejudice.

### 6. *Punitive Damages*

As Defendants concede, Plaintiff may only pursue punitive damages based on his § 1983 claim against the Individual Defendants in their personal/individual capacities. However, Defendants also note—and Plaintiff does not object—that a complainant cannot pursue punitive damages for a Title IX claim as a matter of law.  (Docs. 76 at 27; 79 at 27.) The Court agrees.  *See Mercer v. Duke Univ.*, 401 F.3d 199, 202 (4th Cir. 2005). Additionally, Plaintiff's state claims have been dismissed, so any associated "claim for punitive damages obviously fails as well."  *See Papike v. Tambrands Inc.*, 107 F.3d 737, 744 (9th Cir. 1997).

Accordingly, the Court grants Defendants' Motion with prejudice only as it relates to Plaintiff's claims for punitive damages under Title IX.

### B. Timeliness

Finally, Defendants argue that Plaintiff's federal and state claims regarding ASU's handling of his Code of Conduct Complaint against Jane "are time barred by the applicable statutes of limitations and Arizona's notice of claim statute."  (*Id.* at 6.)  Defendants also argue that Plaintiff impermissibly added Defendants Ms. Ojeda and Ms. Russo in his SAC. (*Id.* at 7.)  Because the Court dismisses Plaintiff's state claims, any timeliness issue is moot as to these claims.   Thus, the Court only addresses Defendant's timeliness argument regarding Plaintiff's federal claims.

### 1. *Title IX and § 1983*

Defendants argue that Plaintiff failed to bring his Title IX and § 1983 claims regarding his Code of Conduct Complaint within two years of accrual.  (*Id.*)  The Court disagrees.

"Title IX does not expressly provide any statute of limitations.  Because a Title IX suit is a civil rights action, [courts] borrow the most appropriate state statute of limitations." *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (citation modified).  The Ninth Circuit holds that the most appropriate statutory period is the forum state's personal injury statute of limitations.  *Id.*  The same is true for § 1983 claims.  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) ("Section 1983 does not contain its own statute of limitations.  Without a federal limitations period, the federal courts apply the forum state's statute of limitations for personal injury actions . . . ." (citation modified)).  Therefore, the Court must apply Arizona's two-year statute of limitations to Plaintiff's Code of Conduct Title IX and § 1983 claims.  *See Pounders v. Enserch E & C, Inc.*, 306 P.3d 9, 11 (Ariz. 2013) (citing A.R.S. § 12-542(1)) (explaining that Arizona "has a statute of limitations, which bars personal injury claims asserted more than two years after the claim is discoverable").

While Title IX claims subject to federal tolling rules, *see Stanley*, 433 F.3d at 1136, and § 1983 claims are subject to state tolling rules, *see Holt v. Orange County*, 91 F.4th 1013, 1018 (9th Cir. 2024), the Federal and Arizona rules are nearly identical.  *Compare Stanley*, 433 F.3d at 1136 ("The touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." (citation modified)) *with Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 925 (Ariz. 2024) ("The discovery rule provides that a statute of limitations is tolled until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." (citation modified)).  Thus, the Court must determine when Plaintiff knew, or should have known, of his Code of Conduct allegations.

Defendants first focus on Plaintiff's Title IX allegations that ASU: denied him "the opportunity to pursue a Title IX and/or sexual misconduct complaint against Jane"; denied "him procedural protections owed to him under both Title IX and the Code of Conduct Procedures; failed "to take any disciplinary action against Jane" related to Plaintiff's

complaint; and failed to classify and investigate Jane's Title IX Complaint against him as "retaliation." (Doc. 76 at 5.) Defendants then focus on Plaintiff's § 1983 allegations that ASU "treated the complaints filed by Jane and [Plaintiff] differently and disparately" because of sex. (*Id.* at 6.) Defendants argue that these claims "accrued in 2021, when [Plaintiff] knew or had reason to know" of these injuries at the time of the disciplinary proceedings. (*Id.* at 6.)

Plaintiff responds that Plaintiff "could not have discovered Defendants' actions regarding the disparate treatment in the handling of his complaint compared to Jane's until [Plaintiff] received a discovery production in connection with his parallel proceedings" in state court on April 1, 2025. (Doc. 79 at 4.) In his SAC, Plaintiff alleges that discovery produced an email where Ms. Ojeda "expressly stated that although Jane's complaint against [Plaintiff] originally was opened as a conduct case, like [Plaintiff's], that case was closed because all of [Plaintiff's] reported behavior fell under the Title IX Formal Greivance Process." (Doc. 62 at 23.) Thus, Plaintiff explains that, prior to this date, he was unaware of "Defendant's handling or disposition of his complaint against Jane." (Doc. 79 at 4.) The Court is persuaded by this argument.

The gravamen of Plaintiff's Title IX and § 1983 claims is the differential treatment between Plaintiff and Jane. Based on Plaintiff's SAC, it appears that he was not aware of ASU's treatment of Jane's initial conduct complaint until April 2025. This differential treatment animates Plaintiff's allegations that he was not afforded an opportunity to bring a Title IX claim like Jane, and thus not afforded the protections of Title IX like Jane, and that Defendants showed favorable treatment of Jane's complaint. Thus, the Court disagrees with Defendants that Plaintiff's allegations regarding ASU's treatment of his and Jane's Code of Conduct Complaints were known in 2021.

Accordingly, the Court finds that Plaintiff could not have known of this differential treatment until April 2025, and thus the new allegations included in Plaintiff's SAC, which was filed on June 30, 2025, is not untimely.

1

## 2.  *Defendants Ms. Ojeda and Ms. Russo*

Alternatively, Defendants argue that Plaintiff's SAC untimely added defendants Ms. Ojeda and Ms. Russo because, under Rule 15(c)(1)(C), "a newly-added defendant must have received notice of the action within 90 days of the original complaint." (Doc. 76 at 7.) Plaintiff argues that even if the Rule applies, "the amendment relates back to [Plaintiff's] original filing" and thus the addition is not untimely. (Doc. 79 at 5.) The Court agrees in part.

In order for an amended complaint to relate back under Rule 15(c)(1)(C), the claimant must satisfy a three-prong test:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.

*Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). The notice requirements in prongs three and four "must have been fulfilled within" the period of time prescribed by Rule 4(m). *See id.* Rule 4(m) states a defendant must be served within 90 days after a complaint is filed.

The Court finds that Plaintiff's allegations relate back to the original complaint. First, the Court agrees with Defendants that the SAC's allegations regarding ASU's treatment of his and Jane's Code of Conduct Complaints rise out of the same conduct set forth in the original pleading. In Plaintiff's First Amended Complaint ("FAC"), Plaintiff references Ms. Ojeda's investigation of Plaintiff's complaint under the Student Code of Conduct. (Doc. 32 at 15.) The FAC also states that ASU adjudicated Plaintiff's complaint under the Student Code of Conduct. (*Id.* at 9.) Thus, the Court finds that Plaintiff's SAC allegations regarding ASU's handling of Plaintiff and Jane's complaints under the Code of Conduct arises out of the same conduct set forth in the original pleading.

Second, the Court finds that Ms. Ojeda had constructive notice of this suit within the Rule 4(m) period. "[C]onstructive notice may exist when the new defendant is represented by the same attorney as the original defendants." *Warden v. Walkup*, No. CV-13-00283-TUC-DCB (BPV) (l), 2018 WL 3084728, at *3 (D. Ariz. June 22, 2018)

(citation modified).   This is known as the "shared attorney" method of imputing constructive notice on a prospective defendant.  *See Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 291 (D.N.J. 2012).  "The shared attorney method assumes that where an originally named party and a party later sought to be added share representation within [90 days] of the filing of a complaint, the shared attorney will likely inform the latter party of the likelihood that he may be joined in the action."  *Id.*  Defendants do not dispute this theory of constructive notice.  (Doc. 80 at 4.)  However, Defendants argue that it is only applicable if the attorney knew that the additional defendants would be added.  (*Id.*)  The Court agrees.  Constructive notice under the shared attorney method is appropriate "so long as there is some showing that the attorney knew that the additional defendant would be added to the existing suit."  *Warden*, 2018 WL 3084728, at *3 (citation modified).

The Court finds the shared attorney method of constructive notice is applicable to Defendant Ms. Ojeda but not Defendant Ms. Russo.  Plaintiff filed his original Complaint on July 25, 2024.  (Doc. 1.)  Osborn Maledon appeared as counsel for the Board, Dr. Vogel, and Ms. Preudhomme in response to the Complaint on August 12, 2024.  (Doc. 14.)  Osborn Maledon also represents Ms. Ojeda and Ms. Russo.  (Doc. 76.)  In his original Complaint, Plaintiff named Ms. Ojeda twelve times.  (Doc. 1 at 13–15.)  In the Complaint, Plaintiff also states that he provided a list of witnesses to Ms. Ojeda but none of his witnesses were interviewed.  (*Id.* at 13.)  Additionally, Defendants attach a transcript of Plaintiff's interview with Ms. Ojeda to their Motion.  (Doc. 76-1.)  Thus, the Court finds that Defendants' attorney knew or should have known that Ms. Ojeda would later be named.  *See Abdell v. City of New York*, 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) ("The inquiry is not . . . whether defense counsel had actual knowledge but whether he knew or should have known that the additional defendants would be added within the statute of limitations period." (citation modified)).  However, the Court does not find that Defendants' counsel knew or should have known that Ms. Russo would later be named because Plaintiff's original Complaint never named Ms. Russo.

Accordingly, the Court finds that Ms. Ojeda was not impermissibly added but Ms.

1    Russo was.  Thus, the Court grants Defendants' request to dismiss any claims against Ms.

2    Russo.

3    **IV.    MOTION FOR SUR-REPLY**

4    "Neither Fed. R. Civ. P. 7 nor the local rules of practice for this District provide for

5    the filing of a sur-reply, and sur-replies are not authorized by any other rules of procedure

6    absent express prior leave of the Court." *Briggs v. Montgomery*, No.

7    CV-18-02684-PHX-EJM, 2019 WL 13039282, at *2 (D. Ariz. Mar. 19, 2019).  Instead,

8    they are permissible "when a party raises new issues or new evidence in a reply brief." *Id.*

9    (quoting *ML Liquidating Tr. v. Mayer Hoffman McCann P.C.*, No. 2:10-CV-02019-RRB,

10    2011 WL 10451619, at *1 (D. Ariz. Mar. 11, 2011)).  But they are "generally discouraged"

11    and are permitted only "in the most extraordinary circumstances." *ML Liquidating Tr.*,

12    2011 WL 10451619, at *1.

13    Here, Plaintiff claims Defendants raised new arguments regarding: (1) Plaintiff's

14    access to a report outlining the result of his complaint of sexual assault against Jane; (2) the

15    nature of the organizations protesting ASU; and (3) that Ms. Ojeda confused the Title IX

16    procedures with the Code of Conduct procedures with regard to Plaintiff's breach of

17    contract and good faith and fair dealing claims.  (Doc. 81 at 2.)  The Court need not address

18    these allegations because the Court did not consider this alleged information in issuing this

19    order. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence

20    is presented in a reply to a motion for summary judgment, the district court should not

21    consider the new evidence without giving the non-movant an opportunity to respond."

22    (citation modified)).  Any evidence and legal issue considered in this order was adequately

23    briefed by both parties.  Accordingly, the Court dismisses Plaintiff's Motion for Leave to

24    File a Sur-Reply.

25    **V.    CONCLUSION**

26    Accordingly,

27    **IT IS HEREBY ORDERED granting in part** Defendant's Motion to Dismiss

28    (Doc. 76) Plaintiff's SAC as follows.  The Court dismisses without prejudice the portion

of Claim II (§ 1983) against the Individual Defendants as it relates to alleged violations of the Due Process Clause.  The Court also dismisses without prejudice Claim III (breach of contract), Claim IV (breach of the covenant of good faith and fair dealing), and Claim V (IIED) as asserted against the Board.  The Court dismisses with prejudice all claims against Ms. Russo.  The Court dismisses with prejudice any claim for monetary damages from the Individual Defendants in their official capacities.  The Court dismisses with prejudice any claim for punitive damages as it relates to Plaintiff's Title IX claim against the Board.

**IT IS FURTHER ORDERED denying in part** Defendant's Motion to Dismiss (Doc. 76) Plaintiff's SAC as to Claim I (Title IX) against the Board and Claim II (§ 1983) against the Individual Defendants as it relates to alleged violations of the Equal Protection Clause.

**IT IS FURTHER ORDERED denying** Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 81).

Dated this 8th day of December, 2025.

Honorable Susan M. Brnovich
United States District Judge